**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

| | |
|---|---|
| GLENN E. SHEALEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FEDERAL INSURANCE COMPANY and | ) |
| CHUBB GROUP OF INSURANCE | ) |
| COMPANIES, | ) |
| | ) |
| Defendants. | ) |

Civil Action No.
12-10723-FDS

_____)

**MEMORANDUM AND ORDER**
**ON MOTION FOR JUDGMENT ON THE PLEADINGS**

SAYLOR, J.

This action arises out of a dispute concerning a homeowner's insurance claim.  In

October 2006, plaintiff Glenn Shealey suffered a loss of the guest house on his property in

Chatham, Massachusetts, due to water damage from a burst pipe.  Defendant Federal Insurance

Company, a member of defendant "Chubb Group of Insurance Companies," insured the

property.[1]  Shealey filed a claim under a policy of homeowner's insurance issued by Federal;

Federal did not dispute liability, but did dispute the amount owed.  The claim ultimately was the

subject of a reference to a three-person panel under Mass. Gen. Laws ch. 175, § 99.  The panel

made a final award of more than $500,000, which has been paid in full by Federal.

Shealey contends that Federal and Chubb breached the insurance contract by not paying

the full amount of his covered losses under the policy.  He further contends that they breached

---

[1] The complaint asserts claims against the "Chubb Group of Insurance Companies."  Defendants contend
that it is not an entity subject to suit, but it is rather a descriptive term used to identify several separately
incorporated and separately capitalized insurance companies, one of which is Federal.

the implied covenant of good faith and fair dealing by engaging in delay and inappropriate actions with regard to the settlement of his claim, in violation of Mass. Gen. Law ch. 176D. Shealey also requests that the Court issue a declaratory judgment interpreting certain insurance policy provisions.

Defendants have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons set forth below, the motion will be granted in part and denied in part.

## I.  <u>Background</u>

The following facts are stated as alleged in the pleadings, with all disputes and inferences construed in plaintiff's favor.[2]

On October 12, 2006, one or more pipes ruptured at the property of Glenn Shealey at 322 Bridge Street, Chatham, Massachusetts.  The incident caused substantial water damage to the guest house on the property.  (Complaint ¶¶ 1, 8).  Shealey was insured at the time of the loss under a Masterpiece homeowner's insurance policy issued by Federal Insurance Company, which covered the entire property, including the main residence and the guest house. (Complaint ¶6).  From the date of loss, Shealey and Federal were engaged in communications concerning the adjustment of the claim.  (Complaint ¶¶10-14).

On April 4, 2008, Federal advised Shealey that the building would have to be demolished and rebuilt, and directed that he obtain estimates for the work.  (Complaint ¶16).  Shealey

---

[2] To the extent that it is consistent with plaintiff's allegations, the Court also draws on information provided in the exhibits to defendants' motion for judgment on the pleadings.  Specifically, the Court draws on the policy itself, and the records of the reference panel proceedings, because those documents are linked to the complaint and their authenticity unchallenged.  "When, as now, a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. Mass. 1998)

obtained plans for the rebuilding of the guesthouse and submitted those plans to the Town of

Chatham.  (Complaint ¶25).  Shealey also asked Federal to provide a response to the new

estimates of costs for rebuilding, particularly with respect to code upgrades.  (Complaint ¶26).

As of September 15, 2008, Federal indicated that it was still investigating the claim "under a full

reservation of rights."  (Complaint ¶27).

      Shealey requested an extension of the two-year statutory period in the policy during

which a claim could be brought.  Federal initially denied, but later granted, that extension.

Shealey filed an "initial complaint" against Federal in Barnstable Superior Court on October 10,

2008.  (Complaint ¶ 30).

      The parties continued to exchange information between October 2008 and September

2010, but were unable to agree upon the amount of the loss.  (Complaint ¶¶31-44).  At some

point during the negotiations, Federal paid Shealey approximately $220,000.  (Complaint ¶38).

At the time of that payment, Shealey estimated a loss in excess of $640,000 in total.  (Complaint

¶38).

      On September 15, 2010, Federal demanded a referral of the dispute to a three-person

panel pursuant to Mass. Gen. Laws ch. 175 §99 and the provisions of the policy.  (Complaint

¶45).  A three-referee panel heard evidence over multiple days of hearings.  The panel issued an

award (initially on October 10 and later amended on December 5) in the amount of $513,454.65.

(Complaint ¶47; Def. Mot. J. Pl. Ex. D).  Federal paid the remaining balance within thirty days

of the issuance of the award.  (Complaint ¶47; Def. Mot. J. Pl. Ex. D).

      The award did not provide compensation for all the losses claimed by Shealey.

(Complaint ¶51).  First, the panel disallowed Shealey's "loss of use" claim of $105,000, because

it determined that it was "not covered by any policy provision."  (Complaint ¶53; Def. Mot. J. Pl.

Ex. D).  The relevant portion of the policy, in the "Extra Living Expenses" section, provides:

> "If part of your house which you usually rent to others cannot be lived in because
> of a covered loss, we cover its fair rental value for the reasonable amount of time
> required to repair, replace or rebuild the part of the house rented or held for rental, during
> the period of time it is usually rented."  (Def. Mot. J. Pl. Ex. A).

Shealey did not formally rent the property, but permitted a caretaker to reside in it in exchange

for his services.  (Complaint ¶53).

Second, the panel also awarded Shealey $21,970 for landscaping claims; Shealey had

sought $77,890.  (Complaint ¶53; Def. Mot. J. Pl. Ex. D).  The policy provided a coverage limit

for such losses of  "5% of the amount of coverage for the house at which the loss occurs."  (Def.

Mot. J. Pl. Ex. A).  The panel calculated the amount using the value of the damaged building

(that is, the guest house), rather than the total insured value of the property.  (Def. Mot. J. Pl. Ex.

D).  The panel also determined on reconsideration that even if the limit were higher, the initial

award was supported as a factual matter.  (Def. Mot. J. Pl. Ex. D).

Shealey filed this action on January 9, 2012, against Federal and Chubb.  The action

challenges the amount he has been paid for his claim and the actions of Federal in settling his

claim.  The complaint alleges claims for breach of contract and breach of the implied covenant of

good faith and fair dealing; a third count seeks a declaratory judgment interpreting the insurance

policy.

## II.   **Procedural Posture**

On April 24, 2012, defendants removed this case to this Court.  On the same day, they

moved for a judgment on the pleadings under Fed. R. Civ. P. 12(c).  On June 28, the case was

referred to alternative dispute resolution with Magistrate Judge Boal.  On August 31, Magistrate

Judge Boal reported that the case did not settle, making the motion ripe for resolution by the Court.

### III.   <u>Standard of Review</u>

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). It differs from a Rule 12(b)(6) motion primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole." *Aponte-Torres*, 445 F.3d at 54-55. Because a Rule 12(c) motion "calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom to the nonmovant's behoof." *R.G. Financial Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

However, to survive a motion for judgment on the pleadings, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). The court will therefore grant defendant's motion for judgment on the pleadings if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

**IV.**    **Analysis**

**A.**    **Breach of Implied Covenant Good Faith and Fair Dealing**

Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract. *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). This implied covenant requires that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Assoc.*, 411 Mass. 451, 471-72 (1991) (quotations omitted). However, the covenant "may not . . . be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Uno Restaurants*, 441 Mass. at 385.

Plaintiff contends that defendants breached the implied covenant of good faith and fair dealing, primarily by engaging in improper conduct not conforming with Mass. Gen. Laws ch. 176D §3.  In particular, plaintiff contends that defendants violated the statutory provisions requiring prompt action by the insurer.  It is well-established that plaintiffs who have been injured by insurance practices violating chapter 176D may bring an action against the insurer under Mass. Gen Laws ch. 93A.  *Murphy v. Nat'l Union Fire Ins. Co.*, 438 Mass. 529, 531 (Mass. 2003) (citing *Van Dyke v. St. Paul Fire & Marine Ins. Co.*, 388 Mass. 671, 675, 448 N.E.2d 357 (1983)).

However, plaintiff here asserts a claim for breach of contract, not a claim under chapter

93A.  Unfortunately for plaintiff, the two causes of action are not equivalent.[3]  As described above, the implied covenant of good faith and fair dealing is intended to provide a cause of action for conduct by one party to a contract that unduly frustrates or renders impossible the expected performance of the contract.  Chapter 93A, however, provides a cause of action for unfair and deceptive practices and is not confined to the terms of the relevant contract.  *Cf. Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 385 (2005) ("The scope of the covenant [of good faith and fair dealing] is only as broad as the contract that governs the particular relationship.").  Simply put, chapter 93A casts a wider net because it is not constrained by the expectations created by the contract.

Here, plaintiff alleges that after defendants advised him that the guest house needed to be torn down and rebuilt, the implied covenant of good faith and fair dealing required them to pay him promptly at least the replacement value of the house (approximately $450,000).  (Pl. Opp. 5).  He contends that because defendants instead paid him only $220,000 up front, they thereby breached the covenant.  (*Id.*).  But if the Court were to embrace plaintiff's view, it would be reading a new duty into the policy.[4]  As described above, the implied covenant of good faith and fair dealing may not be invoked for this purpose.  *Uno Restaurants*, 441 Mass. at 385.  Accordingly, plaintiff's claim for breach of the implied covenant of good faith and fair dealing will be dismissed.

---

[3] In similar cases concerning insurance disputes, courts have not been a model of clarity on this point, and have allowed the claims to proceed together without distinguishing between them.  *See, e.g., Beals v. Commercial Union Ins. Co.*, 61 Mass. App. Ct. 189, 194 (Mass. App. Ct. 2004) (referring to the 93A and breach of implied covenant claims collectively as "bad faith claims.").  Here the Court breaks with this pattern.

[4] This is true regardless of whether the described actions violated Mass. Gen. Laws ch. 176D §3; plaintiff has not alleged that the provisions of chapter 176D were part of the contract by incorporation or otherwise.

B.     <u>**Claims Concerning the Amount of Loss**</u>

In Massachusetts, "the prior submission of a claim to arbitration may have a preclusive effect on the same claim in a subsequent court action. The inquiry turns, in large part, on whether the 'right' or 'issue' on which preclusion is sought has been 'the product of full litigation and careful decision.'" *Miles v. Aetna Cas. & Sur. Co.*, 412 Mass. 424, 427 (1992) (quoting *Home Owners Fed. Sav. & Loan Ass'n v. Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 455 (1968)). As to reference proceedings pursuant to Mass. Gen. Laws ch. 175, §99, courts have generally held that the panel's calculation of the amount of loss has binding preclusive effect, but issues of construction of policy terms "remain open for reexamination in an action on the policy." *Augenstein v. Insurance Co. of North America*, 372 Mass. 30, 36 (1977). In other words, the insured can only challenge the panel's award on the basis that it misconstrued a term in the policy; he cannot simply allege that the award was unfair or challenge the factual findings of the panel. *See id.* (relying on *Fox v. Employers' Fire Ins. Co.*, 330 Mass. 283 (1953) to find that referees "find the amount of loss in light of their own interpretation of the terms of the policy, but the question of construction . . . remain[s] open for reexamination in an action on the policy."); *see also F. & M. Skirt Co. Inc. v. Rhode Island Ins. Co.*, 316 Mass. 314 (1944) (finding that when "the basis of the dispute has to do with the amount of loss or the fact of loss and no question of liability is involved, the case is a proper one for arbitration."); *accord Audubon Hill S. Condo. Ass'n v. Cmty. Ass'n Underwriters of Am.*, 2012 LEXIS 248 (Mass. App. Ct. Sept. 20, 2012) (interpreting *Augenstein* as articulating the rule that a party who fails to dispute the meaning of the terms of the policy concedes liability).

Here, plaintiff makes a number of allegations as to the panel's determination of his

amount of loss.  He primarily alleges that the panel did not properly consider the evidence of his estimates, of defendants' estimate, and of the code upgrades required.  This is essentially an attempt to challenge the overall award, or at least the factual findings underlying that award.  It would be improper for the Court to send these claims to the jury for reevaluation.  The purpose of the statutorily mandated reference procedure is to provide a "summary method of establishing the amount of the loss," and allowing the relitigation of that issue before a jury would wholly eviscerate that purpose.  *Hanley v. Aetna Ins. Co.*, 215 Mass. 425, 430 (1913).

For these reasons, the plaintiff's claims will be dismissed to the extent that they are not challenging the panel's interpretation of policy terms.

### C.   Claims Concerning Policy Terms

Only two of plaintiff's allegations can fairly be read to challenge the panel's award on the basis of its interpretation of specific policy terms.  First, plaintiff contends that the panel misinterpreted the term "house" when calculating the limit of his coverage for landscaping.  Second, plaintiff contends that the panel misinterpreted the term "rent" when determining whether his "loss of use" claim was valid.  For the reasons set forth below, the claim as to the first issue will be dismissed, but the claim as to the second will not.

On its face, the claim regarding the panel's determination of which "house" was to be used when calculating the limit of his coverage for landscaping appears to be a proper subject for adjudication.  However, the panel, in its reconsideration of this precise issue, made the specific finding that even if the limit was higher, the initial award was supported as a factual matter. (Def. Mot. J. Pl. Ex. D).  As noted, plaintiff cannot challenge this factual finding.  Therefore, the claim as to the term "house" will be dismissed.

The claim as to the term "rent," however, is a proper challenge to the panel's award.  The award gives as its stated reason for denying the "loss of use" claim the fact that it was "not covered under any policy provision."  (Def. Mot. J. Pl. Ex. D).  Whether or not plaintiff's permitting his caretaker to reside in the house is covered as "rent" under the policy is a matter of construction that can be challenged in court; it is not a factual finding or a calculation.  Therefore, the plaintiff's claim will not be dismissed as to the panel's construction of the term "rent."

**V.**   **Conclusion**

For the foregoing reasons, defendant's Motion for Judgment on the Pleadings is GRANTED as to all of the plaintiff's claims except the claim as to the "loss of use" and DENIED as to said claim to the extent it concerns the panel's construction of the term "rent."

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated:  October 15, 2012                              United States District Judge