**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
 )
**GLENN E. SHEALEY,**  )
 )
 **Plaintiff,**  )
 )  **Civil Action No.**
 **v.**  )  **12-10723-FDS**
 )
**FEDERAL INSURANCE COMPANY and**  )
**CHUBB GROUP OF INSURANCE**  )
**COMPANIES,**  )
 )
 **Defendants.**  )
_____)

**MEMORANDUM AND ORDER**
**ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AND PLAINTIFF'S MOTION FOR RECONSIDERATION**

**SAYLOR, J.**

This action arises out of a dispute concerning a homeowner's insurance claim.  In

October 2006, plaintiff Glenn Shealey suffered a loss of the guest house on his property in

Chatham, Massachusetts, due to water damage from a burst pipe.  Shealey contends that

defendant Federal Insurance Company, a member of defendant "Chubb Group of Insurance

Companies," breached the insurance contract on the home by not paying the full amount of his

covered losses under the policy.   The claim ultimately was the subject of a reference to a three-

person panel under Mass. Gen. Laws ch. 175, § 99.

In its memorandum and order on the defendants' motion for judgment on the pleadings,

the Court dismissed all of plaintiff's claims except the claim as to the "loss of use" based on the

theory that plaintiff "rented" his home to a caretaker in exchange for services.  Defendants have

moved for summary judgment on that remaining claim, contending that the policy term "rent"

should not be interpreted to include the arrangement that allegedly existed between plaintiff and

a caretaker, which involved no transfer of money.  Plaintiff has concurrently moved for

reconsideration of the Court's memorandum and order, contending that other claims could fairly

be read to challenge the reference panel's award on the basis of its interpretation of policy terms.

Plaintiff has also moved for leave to amend his complaint to add, among other things, a claim

under Mass. Gen. Laws ch. 93A.

 For the reasons set forth below, defendants' motion will be denied, plaintiff's motion for

reconsideration will be granted in part and denied in part, and plaintiff's motion to amend will be

granted.

## I.      Background

The factual background is recounted in the memorandum and order on defendants'

motion for judgment on the pleadings.

## II.     Standard of Review

### A.      Summary Judgment

The role of summary judgment is to "pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816,

822 (1st Cir. 1991) (internal quotation omitted).  Summary judgment is appropriate when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue of material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue is "one that

must be decided at trial because the evidence, viewed in the light most flattering to the

nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party."

*Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).  The Court must

view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).

### B.     Reconsideration

The Court has "substantial discretion and broad authority" to grant a motion for reconsideration pursuant to Fed. R. Civ. P. 59(e). *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 81-82 (1st Cir. 2008). A motion for reconsideration will be granted upon a showing of (1) a "manifest error of law," (2) new evidence, or (3) a misunderstanding or other error "not of reasoning but apprehension." *Id.* A Rule 59(e) motion cannot be used to "advance a new argument that could (and should) have been presented prior to the district court's original ruling."

*Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003). Nor is a Rule 59(e) motion an appropriate means to "repeat old arguments previously considered and rejected." *Nat'l Metal Finishing Co., Inc. v. Barclays American/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990).

## III.    Analysis

### A.     Summary Judgment as to "Loss of Use" Claim

In Massachusetts, it is well-settled that the interpretation of an insurance policy is a question of law, making it appropriate for the Court to address on summary judgment. *Sullivan v. Southland Life Ins. Co.*, 67 Mass. App. Ct. 439, 442-43, (2006); *Norfolk & Dedham Mut. Fire Ins. Co. v. Quane,* 442 Mass. 704, 707 (2004). Massachusetts law requires that the terms of an insurance policy be interpreted according to the "fair meaning of the language used, as applied to the subject matter." *Davis v. Allstate Ins. Co.*, 434 Mass. 174, 179 (2001) (quoting *Bilodeau v.*

*Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 541 (1984)).

The term at issue here is "rent," as it is used in the policy's "loss of use" provisions providing coverage for a "reasonable increase in . . . normal living expenses" arising from the loss of the "fair rental value" of a property that it is "usually rent[ed] to others."[1]  The policy itself does not define the term "rent" as it is used for the calculation of "loss of use" payments. According to one treatise, "rent is sometimes defined as the consideration agreed to be paid by one party for the use and occupancy of the real estate of another."  2 POWELL ON REAL PROPERTY § 16A.01.  The treatise goes on to explain that "[e]ven under the historically narrow definition of rent, the return to the lessor can take many forms," the most common of which is money.  *Id.*  The law of property in the United States has for centuries recognized leaseholds wherein the tenant farmer provides the landowner with a share of his harvest in exchange for the right to live on and work the land.  *See id.*  Accordingly, the Court finds that the alleged exchange of caretaking services for use of the Shealey property could constitute "rent" within the meaning of the policy.

However, the summary judgment inquiry does not end there.  There must still be a material issue of fact in dispute as to the existence of that alleged landlord-tenant relationship for the claim to survive summary judgment.  At this early stage, plaintiff relies only on his own statements as evidence of the existence of such a relationship.  Defendant points to prior statements by plaintiff that appear to contradict his current assertions that he allowed the

---

[1] To the extent that plaintiff tries to raise additional "loss of use" claims as to other increased living expenses, the Court finds that these claims were not properly raised before it in earlier filings nor were they properly before the reference panel.  Furthermore, and in any event, the claims are not supported by any evidence in the record.  Accordingly, the Court will confine its summary judgment analysis to the "loss of use" claim properly before it, which is the claim related to "rent."

caretaker to use the guest house in exchange for his services.  However, there is a very limited amount of evidence in the record at all due to the parties' request that discovery not commence until after the Court decided the motion for judgment on the pleadings.  (*See* Pl. Rec. for Sched. Ord.).  The Court finds that on the limited record now before it, a reasonable juror could credit plaintiff's testimony and conclude that he did allow his caretaker to use his home in exchange for services.  Accordingly, defendants' motion for summary judgment will be denied.

**B.      Reconsideration of the Dismissal of All Other Claims**

During oral argument on the pending motions, there was extensive discussion of the preclusive effect of the reference panel's decision and the scope of this Court's review of that decision.  The Court, in its previous memorandum and order, found that under Massachusetts law the reference panel's award generally had preclusive effect as to the "amount of loss," and "the insured can only challenge the panel's award on the basis that it misconstrued a term in the policy; he cannot simply allege that the award was unfair or challenge the factual findings of the panel."  (M & O at 8).  At oral argument, both parties took issue with this interpretation of the regrettably sparse and somewhat dated Massachusetts caselaw on the subject.

However, in urging the adoption of a new formulation of the scope of review, neither party demonstrated how that ruling was a "manifest error of law."  *Ruiz Rivera.* 521 F.3d at 81-82.  Indeed, the cases in the Court's earlier memorandum and order provide further support for the holding that the reference panel's decision is subject to review on questions of law, but not questions of fact.  *See, e.g., Augenstein v. Insurance Co. of North America*, 372 Mass. 30, 38 (1977) (declining jurisdiction over a challenge to a reference panel's award, because the challenge "did not seek to impeach the award for bias of the referees, their refusal to hear

5

relevant proffered evidence, or any other illegality or mistake of law") (internal citations omitted); *Fox v. Employers' Fire Ins. Co.*, 330 Mass. 283, 289 (1953) ("It is one thing to impeach an award for error of law and quite another to assert that referees exceeded their authority in confining their award to the loss or damage covered by the policy. We do not understand that it is contended that the referees in the case at bar were in error in their construction of the policies."); *Audubon Hill S. Condo. Ass'n v. Cmty. Ass'n Underwriters of Am.*, 82 Mass. App. Ct. 461, 465 (2012) ("As with contracts generally, the interpretation of the unambiguous terms of an insurance policy is a matter of law for the trial court and then the reviewing court.").

Here, the question of whether the term "rent" under Massachusetts law encompasses the alleged arrangement between plaintiff and his caretaker is certainly one that addresses a potential mistake of law on the part of the reference panel.  Accordingly, it is properly before the Court. However, plaintiff now urges reconsideration of the ruling as to his other claims challenging the reference panel's decision and find that they, too, are premised on alleged mistakes of law.

The new arguments, and new averments, made by plaintiff both in his briefing and at oral argument do not compel a different result as to the vast majority of plaintiff's claims.  However, the Court is now convinced, upon a reexamination of the record, that the claims as to the panel's award for construction of the basement and the bulkhead are directly based on the panel's interpretation of the law and the policy, and did not constitute merely decisions as to the "amount of loss."  Specifically, it is evident from the panel's itemized decision that the awards of $22,000 for "Cast-In-Place Concrete," $0 for "Concrete Bulkhead," and $0 for "Concrete Unit Masonry" were based on the panel's interpretation of certain Town of Chatham building code

requirements in conjunction with the terms of the policy's "code upgrade" coverage.  Because

the interpretation of the building code and the policy terms are both matters of law, the Court

now finds that the plaintiff's limited challenge to the portions of the award that can be explicitly

and directly attributed to those interpretations is properly before it.

Accordingly, plaintiff's claims as to the construction of the basement and the bulkhead

will be reinstated to the limited extent just described.  However, none of plaintiff's other claims

can be traced to the panel's alleged mistakes of law, and reconsideration of those claims will be

denied.

### C. <u>Motion to Amend</u>

Fed. R. Civ. P. 15(a)(2) provides that leave to amend pleadings should be "freely

given . . . when justice so requires."  Leave to amend may be denied for reasons such as "undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, [and] futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182

(1962).

Here, defendants contend that plaintiff unduly delayed moving to amend, and, in any

event, the proposed amendment asserts a frivolous claim.  As to undue delay, the proposed

chapter 93A claim primarily involves the same conduct that has been the subject of the

underlying dispute between the parties for a number of years.  Therefore, defendants are not

materially prejudiced by the addition of this new legal theory; defending against it will require

putting forth substantially the same evidence as defending the claims in the initial complaint.  It

is somewhat troubling that plaintiff neglected to serve defendant with a chapter 93A demand

letter at any earlier point; he did, however, serve that letter *prior* to the dismissal of his breach of implied covenant of good faith and fair dealing claim, in which the Court distinguished between it and a chapter 93A claim.  That sequence of events makes it less likely that plaintiff is acting in bad faith or seeking to manipulate the litigation process.

Defendants further contend that the proposed amendment is frivolous.  With respect to the proposed chapter 93A claim, defendants contend that it lacks merit and that it is barred by the statute of limitations.  The alleged lack of merit of the proposed claim is not so obvious that the motion to amend should be denied on that basis alone.  Furthermore, the limitations period for chapter 93A claims is four years; although the initial loss happened in 2006, the events complained of occurred in the context of negotiating the claim, at least some of which occurred within the limitations period.  *See* Mass. Gen. Laws ch. 260, § 5A.  Finally, this is not a situation where the case would be terminated but for the amendment.  *Compare Hatch v. Dep't for Children*, 274 F.3d 12, 19 (1st Cir. 2001) ("The appropriateness *vel non* of a district court decision denying a motion to amend on the ground of futility depends, in the first instance, on the posture of the case."); *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 59 (1st Cir. 1990) (denying a motion to amend after examining the proposed amendment and finding "nothing of decretory significance, that is, nothing which would repair the holes in [plaintiff's] case.").  For those reasons, the Court finds that the proposed amendment is not so obviously futile as to warrant the denial of the motion to amend.[2]

Accordingly, the plaintiff's motion to amend the complaint will be granted.

---

[2] To the extent that the amended complaint also includes amendments to the other claims and their factual bases, the Court will permit it to be filed in its present form, but the Court will not again reconsider the dismissal of any of those claims.

**IV.**     <u>**Conclusion**</u>

For the foregoing reasons, defendants' Motion for Summary Judgment is DENIED,

plaintiff's Motion for Reconsideration is GRANTED in part and DENIED in part, and plaintiff's

Motion to Amend is GRANTED.

**So Ordered.**


                                                        /s/ F. Dennis Saylor
                                                        F. Dennis Saylor IV
Dated: April 3, 2013                                     United States District Judge